IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ALPHAGEN BIOTECH,<br><br>    Plaintiff, | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING PLAINTIFF'S MOTION FOR ADDITIONAL TIME FOR LIMITED DISCOVERY REGARDING PERSONAL JURISDICTION |
| vs. | |
| LANGOOST ENTERPRISES, LLC (DBA APPLIED NUTRACEUTICALS) and JOHN DOES 1-10,<br><br>    Defendant. | Case No. 2:13-CV-15 TS |

This matter is before the Court on a Motion to Dismiss for Lack of Personal Jurisdiction

filed by Defendant Langoost Enterprises, LLC (DBA Applied Nutriceuticals).[1]  Also before the

Court is Plaintiff Alphagen Biotech's Motion for Additional Time for Limited Discovery

_____

[1]The caption names Defendant's DBA as "Applied Nutraceuticals" but Defendant indicates that the correct spelling is "Applied Nutriceuticals."

Regarding Personal Jurisdiction.  For the reasons discussed below, the Court will grant

Defendant's Motion to Dismiss and deny Plaintiff's Motion for Additional Time for Limited

Discovery Regarding Personal Jurisdiction.

I.  BACKGROUND

Plaintiff Alphagen Biotech ("Alphagen") is a Utah limited liability company, with its

principal place of business in Salt Lake City, Utah.  Defendant Langoost Enterprises, LLC (DBA

Applied Nutriceuticals) ("Applied") is a Delaware corporation with its principal place of

business in North Carolina.

Plaintiff Alphagen markets and sells dietary supplements, specifically a product called

SeroVax.  Plaintiff alleges that SeroVax has been shown to increase human growth hormone

("HGH") levels in men and women.  Defendant Applied sells a competing product called HGH

Up.  Plaintiff alleges that Defendant has made false claims in its marketing of HGH Up.

Plaintiff brings claims against Defendant for false advertising in violation of the Lanham

Act, unfair competition in violation of the Lanham Act, and unfair competition in violation of

Utah's Truth in Advertising Act.  Plaintiff also seeks declaratory and injunctive relief.

The following facts are relevant to Defendant's Motion to Dismiss and are found in the

Declaration and Amended Declaration of Pete Vas Dias.

Defendant has never had any offices in the state of Utah, has no business operations in

Utah, and is not registered to do business in Utah.  Defendant does not own, lease, or control any

property in Utah.  Defendant has never owned or otherwise controlled any asset in Utah, and has

never maintained any bank accounts in Utah.  Defendant has never maintained any telephone or

2

fax listings in Utah.  Defendant has never paid any taxes in Utah.  In addition, none of Defendant's officers, directors, members, managers, employees, or agents have traveled to Utah for business on behalf of Defendant in the past five years.  Defendant has not entered into a contract with a person in or a company headquartered in Utah.  Finally, Defendant has not been sued in Utah in the last 10 years, with the exception of this action.

Independent distributors—including e-tailers, retailers, and wholesalers—sell Defendant's products, including HGH Up.  These distributors are entirely independent and operate separately from Defendant.  Defendant does not control when, where, or how these distributors sell their products or which customers these distributors target.  None of the distributors is an exclusive distributor to Utah.  However, certain distributors, including GNC and Vitamin Shoppe, operate stores in Utah.  At least one of these Utah stores sells HGH Up.

In response to this action, Defendant has attempted to gather information concerning sales made by these distributors to customers in Utah.  Defendant's two largest distributors—Vitamin Shoppe and Europa—have provided sales numbers.  In 2012, Vitamin Shoppe sold 11,893 units of HGH Up.  Only 38 units were sold to Utah customers.  Europa purchased 5,893 from Defendant, and sold 96 units to customers in Utah.  The sales to Utah customers made up 0.3% of Vitamin Shoppe's total HGH Up sales and 1.6% of Europa's total HGH Up sales.

In addition to sales through independent distributors, Defendant offers its products for sale on its website.  Defendant's internet sales make up only 2.7% of its total sales.  Utah residents can purchase products from Defendant's website and can have those products shipped to Utah.  In the twelve months leading up to March 2013, Defendant sold $479.41 worth of

product to customers in Utah, making up 0.02% of Defendant's total sales for that time period. In that same time period, Defendant sold four units of HGH Up to customers believed to be located in Utah.  This makes up just 1.0% of Defendant's total internet sales of HGH Up for that time period.

## II.  PERSONAL JURISDICTION STANDARD

Plaintiff carries the burden of establishing personal jurisdiction over Defendant.[2]  "'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[3]  "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[4]

"When the evidence presented on the motion to dismiss consists of affidavits and other written materials, the plaintiff need only make a prima facie showing."[5]  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's

---

[2]*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

[3]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[4]*Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[5]*Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

affidavits.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[6]

To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state.[7]  The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction.  For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[8]  A court should consider the following factors in determining whether general jurisdiction exists: (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.[9]  These activities must be continuous and systematic to justify a finding of general jurisdiction.[10]

When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that "arise out of or relate to those

---

[6] *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

[7] *World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[8] *Soma*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[9] *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

[10] *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

activities."[11]  In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[12]

If the Court finds that Defendant had adequate minimum contacts with the forum state, the Court must also determine that personal jurisdiction is reasonable in light of the circumstances surrounding the case or, in other words, that exercising jurisdiction would not offend traditional notions of "fair play and substantial justice."[13]  "Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies."[14]

### III.  DISCUSSION

A.    MOTION TO DISMISS

Defendant argues that it has insufficient contacts with Utah to allow the Court to exercise personal jurisdiction.  As stated, jurisdiction can be established by either general jurisdiction or specific jurisdiction.  Both will be discussed below.

---

[11]*Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

[12]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[13]*Burger King*, 471 U.S. at 476.

[14]*Bell Helicopter*, 385 F.3d at 1296.

*1.      General Jurisdiction*

For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[15]  These activities must be continuous and systematic to justify a finding of general jurisdiction.[16]

Plaintiff argues that additional discovery is required to determine whether general jurisdiction exists.  To that end, Plaintiff has filed its Motion for Additional Time for Limited Discovery Regarding Jurisdictional Issues.  Based on this, Plaintiff does not argue for general jurisdiction and the Court need not determine whether there is general jurisdiction over Defendant.  However, based on the evidence presented, there is insufficient evidence from which the Court could find general jurisdiction.  Therefore, the Court will consider whether specific jurisdiction exists.

*2.      Specific Jurisdiction*

Plaintiff argues that the exercise of specific jurisdiction is appropriate for two reasons.  First, Plaintiff relies on Defendant's website and the sales made through that website to Utah customers.  Second, Plaintiff points to sales made by Defendant's independent distributors.

*a.      Defendant's Website*

"Establishing jurisdiction through the Internet, or more specifically through a website, has been analyzed by some courts under a framework of three general categories lying along a sliding

---

[15]*Soma*, 196 F.3d at 1295 (quoting *Arguello*, 838 P.2d at 1122).

[16]*Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 416.

scale."[17]   On one end of the scale is where a defendant clearly does business over the Internet, such as entering into contracts which require the knowing and repeated transmission of files over the Internet.[18]   Jurisdiction is proper in those cases.[19]   On the other end of the scale are passive web sites that do little more than make information available to those who are interested.[20] Exercising jurisdiction in these cases is inappropriate.[21]   A middle category encompasses interactive web sites where a user can exchange information with the host computer.[22]   In this category, whether jurisdiction is appropriate depends on the nature and level of interactivity.[23] The Tenth Circuit "has not taken a definitive position on the *Zippo* sliding scale test" and has noted that courts employing this test "tend to employ it more as a heuristic adjunct to, rather than a substitute for, traditional jurisdictional analysis."[24]

Plaintiff argues that Defendant operates an interactive website from which Utah residents can purchase their products.  This, Plaintiff argues, is sufficient to establish personal jurisdiction. In support of this argument, Plaintiff relies heavily on a case from this District: *Del Sol, L.C. v.*

---

[17]*Xactware, Inc. v. Symbility Solution Inc.*, 402 F. Supp. 2d 1359, 1363 (D. Utah 2005) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997)).

[18]*Zippo*, 952 F. Supp. 2d. at 1123-24.

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]*Id.*

[23]*Id.*

[24]*Shrader v. Biddinger*, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011).

*Caribongo, LLC*.[25]  In *Del Sol*, the Court found personal jurisdiction where the defendant's website provided "for a high level of interactivity" and "seamlessly allow[ed] a user to purchase its products.[26]  The Court found that "the nature of the website itself provides jurisdiction."[27]

Here, as in *Del Sol*, Defendant operates an interactive website from which Utah residents can purchase Defendant's product.  However, in *Del Sol*, there was "a nexus between the products for sale on [the defendant's] website and Plaintiff's claims of copyright and trade dress infringement.  Moreover, by infringing on a Utah company's mark, the brunt of any confusion will be felt in Utah."[28]  The same cannot be said here.  There is no nexus between Plaintiff's claims and Defendant's website.  Further, the brunt of the injury associated with Plaintiff's claims is not centralized to Utah.  Plaintiff alleges that Defendant has made false claims regarding its product.  The injury from these claims is not focused on Utah.  The only connection to Utah is that Utah is Plaintiff's home state.  This is insufficient to establish personal jurisdiction in this case.

Within this district and elsewhere, "courts have looked to find '*something more*' that creates actual acts directed at the forum state other than the mere existence of an interactive website."[29]  Other courts have warned that "[c]ourts should be careful in resolving questions

---

[25]2012 WL 530093 (D. Utah Feb. 17, 2012).

[26]*Id*. at *4.

[27]*Id*.

[28]*Id*. at *5.

[29]*Xactware, Inc.*, 402 F. Supp. 2d at 1364.

about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'"[30]  Thus, "[b]eyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way *target* the forum state's market."[31]

In this case, there is not "something more" that would allow the Court to exercise jurisdiction over Defendant based on its website.  There is no evidence that Defendant uses its website to somehow target Utah residents and the Amended Declaration of Pete Vas Dias specifically states that the website does not target Utah residents.  For example, there are no special deals or offers made specifically to Utah residents.  Further, Defendant has sold a de minimus amount of product to Utah residents over the past year.  This bolsters the conclusion that Defendant has not done anything to specifically direct its activities to Utah.  Therefore, the Court cannot find that Defendant has purposefully directed its activities at residents of Utah based on the operation of its website.

---

[30]*Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

[31]*be2 LLC v. Ivanov*, 642 F.3d 555, 558-59 (7th Cir. 2011); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) ("[T]there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.").

          *b.*    *Independent Distributors*

Plaintiff also argues that Defendant's sales through independent distributors are sufficient to establish personal jurisdiction.  Plaintiff does so by advancing a stream of commerce argument.

In *World-Wide Volkswagen Corp. v. Woodson*, the Supreme Court held that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."[32]  Thus, if the sale of a product "arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others."[33]

In *Asahi Metal Industry Co., Ltd v. Superior Court of California*,[34] the Court considered "whether the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes minimum contacts between the defendant and the forum State

---

[32]444 U.S. at 297-98.

[33]*Id*. at 297.

[34]480 U.S. 102 (1987).

such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."[35]

In an opinion for four Justices, Justice O'Connor stated that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State."[36]  Rather, additional conduct was required.  Justice O'Connor provided several examples, including: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."[37]  However, Justice O'Connor noted that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."[38]

Justice Brennan, also writing for four Justices, authored a competing concurring opinion.  Justice Brennan stated that "the placement of a product into the stream of commerce is consistent with the Due Process Clause."[39]

As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a

---

[35]*Id*. at 105 (quotation marks and citations omitted).

[36]*Id*. at 112.

[37]*Id*.

[38]*Id*.

[39]*Id*. at 117.

surprise.  Nor will the litigation present a burden for which there is no corresponding benefit.  A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity.  These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.[40]

In *J. McIntyre Machinery, Ltd. v. Nicastro*,[41] the Supreme Court recently took the opportunity to provide greater clarity to *Asahi*.  *J. McIntyre* involved a products liability suit filed in New Jersey after the plaintiff was injured using a metal-shearing machine manufactured by J. McIntyre Machinery, Ltd.  The facts used to support a finding of personal jurisdiction were: (1) that an independent company agreed to sell J. McIntyre's machines in the United States; (2) J. McIntyre officials attended annual conventions in the United States where they advertised their machines, though no convention ever took place in New Jersey; and (3) up to four J. McIntyre machines ended up in New Jersey.

Based upon these facts, the New Jersey Supreme Court held that a New Jersey court could "exercise jurisdiction over a foreign manufacturer of a product so long as the manufacturer 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.'"[42]

The Supreme Court rejected this conclusion.  The Court stated that "[t]he principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit

---

[40]*Id*.

[41]131 S.Ct. 2780.

[42]*Id*. at 2785 (quoting *Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 591 (N.J. 2010)).

to the power of a sovereign.  In other words, the defendant must purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[43]  "Sometimes a defendant does so by sending its goods rather than its agents.  The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."[44]  Thus, "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."[45]

The Court stated that "[t]he question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct."[46]  The following example was provided:

> The owner of a small Florida farm might sell crops to a large nearby distributor, for example, who might then distribute them to grocers across the country.  If foreseeability were the controlling criterion, the farmer could be sued in Alaska or any number of other States' courts without ever leaving town.  And the issue of foreseeability may itself be contested so that significant expenses are incurred just on the preliminary issue of jurisdiction.  Jurisdictional rules should avoid these costs whenever possible.[47]

---

[43]*Id*. at 2788 (quotation marks and citations omitted).

[44]*Id*.

[45]*Id*. at 2789.

[46]*Id*.

[47]*Id*. at 2790.

14

With these principles in mind, the Court considered the facts of the case before it:

> The distributor agreed to sell J. McIntyre's machines in the United States; J. McIntyre officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey. The British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State.[48]

The Court found that, while these facts may reveal an intent on behalf of J. McIntyre to serve the U.S. market, "they do not show that J. McIntyre purposefully availed itself of the New Jersey market."[49]  The Court held: "At no time did petitioner engage in any activities in New Jersey that reveal an intent to invoke or benefit from the protection of its laws."[50]  Therefore, New Jersey was "without power to adjudge the rights and liabilities of J. McIntyre, and its exercise of jurisdiction would violate due process."[51]

The facts of this case are similar.  Defendant has entered into distribution agreements with independent distributors, including wholesalers, e-tailers and retailers.  Certain of these distributors have made sales to consumers in Utah.  However, Defendant states that these distributors are entirely separate from Defendant and that it does not control where, when, or how these distributors sell their products, or which customers they target.  Plaintiff has provided nothing to suggest that this statement is untrue.  While the distributors have made limited sales to Utah residents, there is nothing to suggest that Defendant has purposefully availed itself of the

---

[48]*Id.*

[49]*Id.*

[50]*Id.* at 2791.

[51]*Id.*

Utah market.  Further, as with its internet sales, the sales made by independent distributors to Utah customers have been minimal.

The cases cited by Plaintiff are distinguishable in that they all involve situations where the defendants knew the products would be sold in specific markets.  There is no such evidence here.  Therefore, the Court finds that the facts before it are insufficient to establish jurisdiction and Defendant's Motion to Dismiss must be granted.

3.      *Fair Play and Substantial Justice*

Even if the Court were to find that the Defendant had adequate minimum contacts with the forum state, the Court must also consider whether personal jurisdiction is reasonable in light of the circumstances surrounding the case, or, in other words, that exercising jurisdiction would not offend traditional notions of "fair play and substantial justice."[52]

"Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies."[53]

> [T]he analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction.  The reverse is

---

[52]*Burger King*, 471 U.S. at 476.

[53]*Bell Helicopter*, 385 F.3d at 1296.

equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].[54]

In this case, the Court finds that exercising jurisdiction over Defendant would offend traditional notions of fair play and substantial justice.  First, Defendant has presented evidence that it would be burdened if forced to litigate in Utah.  Defendant is a North Carolina corporation and the majority of its witnesses and evidence are located there.  Therefore, the Court finds that this factor weighs in Defendant's favor.  Second, the Court finds that the State of Utah has little interest in resolving this dispute.  While Utah certainly has an interest in providing a forum for its citizens, given the limited contacts that Defendant has had with the State and its citizens, this interest is severely limited.  Third, Plaintiff has an interest in receiving convenient and effective relief in Utah.  Therefore, this factor weighs in favor of Plaintiff.  Finally, for substantially the same reasons set forth above, the Court finds that the judicial system's interest in obtaining the most efficient resolution of controversies does not favor jurisdiction.  Therefore, even if Defendant had sufficient minimum contacts, the Court finds that exercising jurisdiction over Defendant would offend traditional notions of fair play and substantial justice.

B.     MOTION FOR JURISDICTIONAL DISCOVERY

Plaintiff requests additional time to conduct additional discovery concerning personal jurisdiction in the event the Court is inclined to grant Defendant's Motion.

---

[54]*AST Sport Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054 (10th Cir. 2008) (alterations in original).

17

A trial court has discretion to refuse to grant discovery on the limited basis of personal jurisdiction.[55]  "[A] refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant."[56]  "Prejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'"[57]  However, a court may deny jurisdictional discovery where the plaintiff has failed to meet its burden of making a threshold prima facie case of personal jurisdiction.[58]

For substantially the same reasons set forth above, the Court will deny Plaintiff's Motion for Additional Time for Limited Discovery Regarding Personal Jurisdiction.  Plaintiff has failed to make a prima facie case of personal jurisdiction and there is nothing to indicate that additional discovery would alter this conclusion.  Further, the discovery sought is overly broad, unduly burdensome, irrelevant to the issues before the Court, and/or has already been provided by Defendant.  Therefore, the Court will deny Plaintiff's request for jurisdictional discovery.

## IV.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 16) is GRANTED.  It is further

---

[55]See *World Wide Ass'n. of Specialty Programs & Schs. v. Houlahan*, 138 F. App'x 50 (10th Cir. 2005) (unpublished opinion); *Health Grades v. Decatur Mem'l Hosp.*, 190 F. App'x 586, 589 (10th Cir. 2006) (unpublished opinion).

[56]*Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002).

[57]*Id.* (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir.1977)).

[58]*McNeill v. Geostar*, 2007 WL 1577671, at *3 (D. Utah May 29, 2007).

ORDERED that Plaintiff's Motion for Additional Time for Limited Discovery Regarding Personal Jurisdiction (Docket No. 20) is DENIED.

The Clerk of the Court is directed to close this case forthwith.

DATED   May 30, 2013.

BY THE COURT:

_____
TED STEWART
United States District Judge